Zignego Company, Inc., Petitioner-Respondent-Cross Appellant,†

v.

Wisconsin Department of Revenue, Respondent-Appellant-Cross Respondent.

Court of Appeals

*No. 96–1965. Submitted on briefs February 10, 1997.—Decided May 22, 1997.*

(Also reported in 565 N.W.2d 590.)

†Petition to review denied.

820

On behalf of the respondent-appellant-cross respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *F. Thomas Creeron III*, assistant attorney general.

On behalf of the petitioner-respondent-cross appellant, the cause was submitted on the briefs of *Charles P. Magyera* of *von Briesen, Purtell & Roper, S. C.* of Milwaukee and *John P. Miller* of *Miller, Simon, McGinn & Clark S.C.* of Milwaukee.

Before Dykman, P.J., Vergeront and Deininger, JJ.

DYKMAN, P.J.   This is an appeal from an order affirming in part and reversing in part a decision of the Tax Appeals Commission (TAC). The TAC had concluded that Zignego Company, Inc. was liable for sales or use taxes on materials it purchased for use in its construction business. The trial court agreed, but reversed TAC's determination that Zignego's failure to file a sales and use tax return tolled the operation of the pertinent statute of limitations. Zignego cross-appeals the trial court's conclusion that it was liable for

sales and use tax for years not barred by the statute of limitations.

We conclude that Zignego's failure to file a sales and use tax return tolled the applicable statute of limitations. We therefore reverse the order as to this issue. However, we affirm the part of the order affirming the TAC's conclusion that Zignego was liable for sales and use tax on materials it bought and used in its construction business.

Zignego Company builds roads and highways for various units of government. It purchases cement, aggregate and other ingredients and mixes them in a "batch plant" or what are commonly called "cement trucks." It takes the concrete to construction sites and places it in forms where it is finished by Zignego's employees. The result is completed road surface and curb and gutter. From April 1, 1984 to March 31, 1992, Zignego paid no sales or use tax on most of the materials used to make its concrete. As a result of a field audit, the Department of Revenue (DOR) issued an assessment against Zignego of $292,394.93 for unpaid sales and use taxes, interest, penalties and late filing fees.

The DOR denied Zignego's request for a redetermination of the tax, and Zignego petitioned the TAC for review. The TAC affirmed DOR's redetermination, and Zignego appealed to the circuit court. The circuit court reversed the TAC's decision in part and affirmed in part. The DOR appeals and Zignego cross-appeals the circuit court's determination.

■

The circuit court concluded that the applicable statute of limitations had run on the DOR's claim for back sales and use taxes. This determination involves the interpretation of a statute and is therefore a matter that we review *de novo. See L & W Constr. Co. v. DOR,* 149 Wis. 2d 684, 688–89, 439 N.W.2d 619, 620 (Ct. App. 1989). But when we review an administrative agency's interpretation of a statute, we often defer to the agency's interpretation. We give "great weight" deference when the following conditions are met:

> (1) the agency was charged by the legislature with the duty of administering the statute; (2) that the interpretation of the agency is one of long-standing; (3) that the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) that the agency's interpretation will provide uniformity and consistency in the application of the statute.

*UFE Inc. v. LIRC,* 201 Wis. 2d 274, 284, 548 N.W.2d 57, 61 (1996). When we give great weight deference, we will sustain a reasonable agency conclusion even if an alternative conclusion is more reasonable. *Id.* at 287, 548 N.W.2d at 62.

■

We give "due weight" deference when the agency has some experience in an area, but has not developed the expertise that necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court. Under this test, we will not overturn a reasonable agency decision that comports with the purpose of the statute unless we determine that there is a more reasonable

interpretation available. *Id.* at 286–87, 548 N.W.2d at 62.

We review an agency's interpretation of a statute *de novo* only when the issue before the agency is clearly one of first impression or when the agency's position on the issue has been so inconsistent so as to provide no real guidance. *Id.* at 285, 548 N.W.2d at 62. Regardless of our standard of review, we review the decision of the agency, not that of the circuit court. *Wisconsin Cent. Ltd. v. Public Serv. Comm'n,* 170 Wis. 2d 558, 567, 490 N.W.2d 27, 31 (Ct. App. 1992).

The statute of limitation that the TAC interpreted to permit DOR to collect sales and use tax retroactive to April 1, 1984 is § 77.59(3), STATS., which provides in pertinent part:

> No determination of the tax liability of a person may be made unless written notice of the determination is given to the taxpayer within 4 years after the due date of the taxpayer's Wisconsin income or franchise tax return or, if exempt, within 4 years of the 15th day of the 4th month of the year following the close of the calendar or fiscal year, within 4 years of the dissolution of a corporation or within 4 years of the date any sales and use tax return required to be filed for any period in that year was filed, *whichever is later. . . .*

(Emphasis added.) Predictably, the parties differ as to the standard we should use in reviewing the TAC's interpretation of § 77.59(3), STATS. In particular, they differ on whether TAC's interpretation is "long standing," a factor necessary if we are to accord TAC's conclusion great weight.

The issue of the application of a statute of limitation to unfiled sales and use tax returns was

discussed in *Bank Equipment Lease, Inc. v. DOR*, No. S–10096 (Wis. Tax App. Comm'n Mar. 14, 1986). The TAC noted that § 77.59(3), STATS., was involved in its decision and concluded that "[t]he statute of limitations for the years under review ha[s] not run because of the petitioner's failure to file annual information returns as required by s. 77.58(2)(a)." We therefore conclude that since 1986, the TAC has had some experience with the legal consequence of failing to file sales and use tax returns.

Zignego argues that *Bank Equipment* was wrongly decided, and therefore we should conclude that the TAC does not have the requisite length of experience for us to defer to its interpretation of § 77.59(3), STATS. But this argument is unsupported by legal authority. In *State v. Shaffer*, 96 Wis. 2d 531, 545–56, 292 N.W.2d 370, 378 (Ct. App. 1980), we said that arguments of this sort are inadequate and would not be considered in the future. We have followed this ruling many times since and see no reason to depart from it here.

In *UFE*, 201 Wis. 2d at 286–87, 548 N.W.2d at 62, the court explained the test for determining whether due weight deference was appropriate:

> Due weight deference is appropriate when the agency has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court. The deference allowed an administrative agency under due weight is not so much based upon its knowledge or skill as it is on the fact that the legislature has charged the agency with the enforcement of the statute in question. Since in such situations the agency has had at least one opportunity to analyze the issue and formulate a position, a court will not

overturn a reasonable agency decision that comports with the purpose of the statute unless the court determines that there is a more reasonable interpretation available.

The legislature has charged the TAC with enforcement of § 77.59(3), STATS. The TAC has had at least one opportunity to analyze that statute and formulate a position. We therefore grant due deference to the TAC's interpretation of § 77.59(3). This means that if the TAC's interpretation is as least as reasonable as Zignego's, we will accept that of the TAC.

The TAC points out that § 77.59(3), STATS., sets up several dates beyond which the DOR cannot assess a sales or use tax. And the statute provides that the proper time limit to use is "whichever is later." One of the times is "within 4 years of the date any sales and use tax return required to be filed for any period in that year was filed. . . ." The TAC's conclusion is that if a sales and use tax return is never filed, the four years never begins to run. A DOR determination of sales or use tax liability can therefore never be untimely where the taxpayer fails to file a sales and use tax return. We conclude that this is a reasonable interpretation of § 77.59(3), STATS.

Zignego points to § 77.59(8), STATS, which provides in pertinent part:

Notwithstanding any other provision of this subchapter, if a person fails to file a report or return required by this subchapter or files a false or fraudulent report or return with the intent in either case to defeat or evade tax required to be paid, the department may determine the proper tax due at any time and without regard to when such failure or filing occurred and without regard to whether a field audit determination was previously made. . . .

Zignego argues that § 77.59(3), STATS., must be construed in harmony with § 77.59(8), STATS. The latter statute, Zignego asserts, provides that an unlimited statute of limitations is applicable when and only when the taxpayer fails to file a report or return with the intent to defeat or evade taxes. Zignego is correct that both statutes speak to the issue of an unlimited statute of limitations when the taxpayer fails to file. Still, the subsections differ. Section 77.59(8) relates to the statute of limitations applicable when either a failure to file or a filing was done with intent to evade the tax. Section 77.59(3) relates to a non-fraudulent failure to file. The trial court concluded that to avoid superfluity in the two statutes, § 77.59(8) should be read to be the only statute that provided an unlimited statute of limitations when a return was not filed. This interpretation, however, makes questionable the meaning of "was filed" in § 77.59(3) when no return was ever filed.

■

We have concluded that we will grant due deference to the TAC's interpretation of § 77.59(3), STATS. Therefore, we may only overturn the TAC's determination if we conclude that some interpretation of § 77.59(3) is more reasonable than the TAC's interpretation. We do not know of a more reasonable interpretation. We therefore must accept the TAC's conclusion that because Zignego failed to file sales and use tax returns, the statute of limitations in § 77.59(3) never began to run.

## ZIGNEGO'S CROSS-APPEAL

Zignego's cross-appeal involves the merits of the TAC's determination that Zignego's purchases of materials which ultimately became concrete roadways

827

and curb and gutter were subject to sales or use tax. This is also a question of law. Zignego asserts that our standard of review is therefore *de novo*. However, as we have previously explained, there is far more to determining the proper standard by which we review an administrative agency's interpretation of a statute than concluding that we are deciding a question of statutory interpretation. In this case, as in many administrative appeals, the standard of review we are required to use determines the outcome of the appeal. To determine our standard of review, we must first consider the applicable statutes.

Section 77.54(2), STATS., exempts from sales and use taxes:

> The gross receipts from sales of and the storage, use or other consumption of tangible personal property becoming an ingredient or component part of an article of tangible personal property or which is consumed or destroyed or loses its identity in the manufacture of tangible personal property in any form destined for sale, but this exemption shall not include fuel or electricity.

Section 77.51(2), STATS., defines a special rule for contractors. Zignego is a contractor. Under § 77.51(2), contractors are considered to be the consumers of the goods that they use in real property construction, thus making the sales and use tax applicable to sales of goods to them. The interaction of these statutes and their application to the facts of this case is a question of law. *Olen v. Phelps*, 200 Wis. 2d 155, 160, 546 N.W.2d 176, 180 (Ct. App. 1996).

The TAC has previously considered an issue similar to the one involved in this appeal. In *Druml v. DOR*, No. 88-S–547 (Wis. Tax App. Comm'n July 8, 1994), the TAC considered the sale of materials used in

the production of concrete slabs under the exemption statute involved here, § 77.54(2), STATS. However, as Zignego notes, *Druml* was decided under the second, or "consumption" exemption of the statute, and Zignego claims that it is entitled to an exemption under the first or "ingredient" exemption. Still, the general determination made in the two cases is the same. And we decided a similar issue in *DOR v. Johnson & Johnson*, 130 Wis. 2d 187, 387 N.W.2d 91 (Ct. App. 1986). There, we considered the effect of § 77.51(18), STATS., 1983–84 (now § 77.51(2), STATS.), which for the purpose of Chapter 77, STATS., sets out a special rule for contractors: " 'Contractors' and 'subcontractors' are the consumers of tangible personal property used by them in real property construction activities and the sales and use tax applies to the sale of tangible personal property to them."

*Johnson & Johnson* considered whether a taxpayer who sold asphalt to local units of government was exempted from paying sales or use tax by § 77.52(13) and (14), STATS. We did not consider the effect of § 77.54(2), STATS. Nonetheless, we described the relationship of the special rule applicable to contractors to the exemption statutes involved in the case:

> APC purchases raw materials from suppliers for use in the manufacture of emulsified asphalt products. The end product is sold to local units of government for road repair and construction. Generally, under secs. 77.52(13) and (14), Stats., AP C's purchases would be exempt from the sales tax if the materials were simply resold to the ultimate consumers. If, however, APC is a "contractor" as that term is defined in sec 77.51(18) [now § 77.51(2)]—if it is a "consumer" of the purchased

829

materials in that its resale to the ultimate customer involves the "performance of real property construction activities" by APC—the exemption is unavailable.

*Id.* at 188, 387 N.W.2d at 91. The TAC relied upon *Johnson & Johnson* to reach its conclusion that Zignego's purchases of materials used in making concrete were not exempt from Wisconsin's sales and use tax.

In *William Wrigley, Jr., Co. v. DOR*, 176 Wis. 2d 795, 801, 500 N.W.2d 667, 670 (1993), the court said: "The Tax Appeals Commission is the final administrative authority that reviews redetermination decisions of the Department of Revenue. The Commission is experienced in applying the interest provisions of Chapter 71, Stats.; therefore, the Commission's decision is entitled to great weight."

■ An agency's experience in construing tax exemption statutes entitles its determinations to great weight even though it may not previously have made the determination of taxability or exemption in a particular fact situation. *Lifedata Med. Servs. v. LIRC*, 192 Wis. 2d 663, 671, 531 N.W.2d 451, 455 (Ct. App. 1995). We conclude that the TAC is experienced in applying the exemption provisions of § 77.54(2), STATS. Therefore, the TAC's decision in this case, like its decision in *Wrigley*, is entitled to great weight. This means that we will sustain the commission's conclusion if it is reasonable even though an alternative interpretation is more reasonable. *UFE*, 201 Wis. 2d at 287, 548 N.W.2d at 62. And the TAC's interpretation of the effect of the interaction of § 77.54(2), STATS., with § 77.51(2), STATS., is reasonable. Accordingly, we need not consider whether

Zignego's view of these statutes is also reasonable. Its view is certainly not more reasonable than that of the TAC. We therefore defer to the TAC's interpretation of these two statutes and consequentially affirm.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.